Merchants' Warehouse Company v. Hitchler et al.,
Appellants.

Argued June 19, 1939. Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Wm. A. Schnader,* with him *Horace A. Segelbaum,* Deputy Attorney General, *Claude T. Reno,* Attorney General, *Bernard G. Segal* and *Thomas D. Caldwell,* for appellants.

*Sterling G. McNees,* with him *Gilbert Nurick,* of *Mc-Nees, Hollinger & Nurick* and *James H. Booser,* for appellee.

OPINION BY MR. JUSTICE LINN, July 3, 1939:

This appeal is from a decree enjoining the members[1] of the Pennsylvania Liquor Control Board, hereafter called the board, "from violating the terms of the agreement entered into between the plaintiff and the Liquor Control Board May 25, 1938, and from interfering with the plaintiff in the proper discharge of its obligations under the terms of said contract; . . ." A fourth defendant-appellant is Walter G. Scott, Deputy Secretary of Property and Supplies of the Commonwealth. June 27, 1938, the Terminal Warehouse Company was allowed to intervene as a party defendant. It also has appealed.

---

[1] At the time of the transaction involved, Crossen was chairman, Brooks and Wagner, the other two members. Since the appeals were taken, Hitchler has succeeded Crossen.

The bill was filed June 17, 1938, two days after the board opened bids for the purpose of awarding a new contract and apparently found that Terminal Warehouse Company was the lowest bidder. The application for a preliminary injunction was heard June 20, 1938, and granted July 13, 1938.[2] It was agreed November 28, 1938, that the testimony taken on the hearing for the preliminary injunction should be considered as if taken on final hearing. December 14, 1938, an amended bill was filed which was answered January 14th. The case was considered on amended bill, answer and testimony and, May 8, 1939, a decree nisi was entered which, after defendants' exceptions were disposed of, was made a final decree with a permanent injunction.

The board, through the Department of Property and Supplies, had made a contract or lease[3] with the plaintiff, dated November 30, 1936, for the storage in plaintiff's warehouse, and transportation by it, of liquors in territory described as the Philadelphia area. It contained these provisions: "The term of this agreement shall be for a period of one (1) year and six (6) months, from December 1st, 1936, expiring May 31, 1938." And, "It is hereby agreed that either party hereto may terminate this lease at the end of the said term or any renewal thereof by giving to the other written notice at least three months prior thereto of the intention to do so, but in default of such notice, this agreement shall

---

[2] See 46 Dauphin Co. Rep. 185.

[3] Section 201 of the Act (1935, P. L. 1250) provides: "General Powers of Board. Under this act, the board shall have the power and its duty shall be: . . . (e) To lease, through the Department of Property and Supplies, as agent, and furnish and equip, such buildings, rooms, and other accommodations as shall be required for the operation of this act." The party of the first part to the agreement was the plaintiff and the party of the second part "The Commonwealth of Pennsylvania, acting through the Department of Property and Supplies, Agent for the Pennsylvania Liquor Control Board." The evidence shows that the rented area appears to be 150,000 square feet of floor space.

continue upon the same terms and conditions, as are herein contained, for a period of two years and so on for successive terms of two years until terminated by either party giving to the other three months' written notice previous to the expiration of the then current term."

Of the points presented in argument, only two must be discussed: (1) the effect of the notice to terminate; (2) whether a resolution of the board adopted May 25th was communicated to plaintiff, as found by the learned court below.

1. It is undisputed that notice to terminate the contract was given. The plaintiff contends, and this view prevailed, that the secretary had not been authorized to give it and that it was not subsequently approved or adopted by the board and for those reasons was ineffective. Appellants assert that the secretary was directed by the Department of Justice and by a member of the board (Brooks) to give the notice and that the other two members approved and that plaintiff treated the termination as effective. The plaintiff, in reply to this, concedes that, until it learned of facts not known at the time, it treated the notice as terminating the agreement, but that subsequently it learned of facts which authorized it to withdraw from its earlier position and to disown its prior action. The learned court below held the notice was ineffective, from which it would follow that the contract remained in force, and, if in force, the injunction[4] would be justified. If the contract continued because the notice was ineffective, it would have been unnecessary for the court to consider what the board subsequently did, because, if the term had not expired, the board could not do anything about it later without plaintiff's consent.

---

[4] The injunction restrained defendants from interfering with a contract made May 25, 1938, rather than the automatic extension of the old agreement from May 31, 1938.

We think the contract was terminated by the notice. It was given in the following circumstances: Terminal Warehouse Company, by letter, on February 24th, had called the board's attention to the fact that plaintiff's contract would continue after May 31st unless notice were given in time, and that, if terminated, that Company would bid in circumstances which "could save the State money on the contract." The secretary of the board testified that in the performance of his duty, he called this letter to the attention of the board's counsel who instructed him to obtain the advice of the Attorney General with respect to the subject; he consulted the First Deputy Attorney General (the Attorney General being absent) who advised[5] that, in the circumstances, it was the duty of the board to give such notice.[6] Mr. Brooks, a member of the board, testified that he approved the form of the letter which had been prepared by counsel, and directed the secretary to send it. The secretary also testified that he discussed the matter with the two members of the board in Harrisburg and, February 27th, discussed it over the telephone with Mr. Crossen, the chairman, in Florida. Mr. Crossen testified that on that date he told the secretary he approved the sending of the notice. It was written on the board's official stationery, was dated February 25, 1938, was signed Pennsylvania Liquor Control Board, by Joseph F. Donovan, Secretary, and stated that: "Pursuant to and in accordance with the provisions of the warehousing agreement between your company and the Commonwealth of Pennsylvania, acting

---

[5] The secretary testified the advice was "If you can save money on this contract you are in duty bound to terminate the contract and report it to the members of the Board."

[6] The Administrative Code of 1929, P. L. 177, Art. V, sec. 512, 71 PS section 192, in part, provides: "It shall be the duty of any . . . officer, having requested and received legal advice from the Department of Justice regarding the official duty of such . . . officer, to follow the same, . . ."

through the Department of Property and Supplies, agent for the Pennsylvania Liquor Control Board, dated November 30, 1936, for a period of one year and six months from December 1, 1936, expiring May 31, 1938, you are hereby notified that the board intends to terminate the said agreement at the end of the said term, to-wit: May 31, 1938." The plaintiff received and acted in accord with that notice, and by letter, dated April 27, 1938, proposed a renewal of the contract and suggested other details to be considered in their negotiation. The learned court below found, as a fact, and the finding is supported by the evidence referred to above, that the three members of the board "individually and separately approved the action" terminating the agreement. Yet, notwithstanding that finding, the notice was held legally defective. As it is at this point that we differ from the learned court concerning the legal effect of what had so been done, we now add, for the purpose of bringing out more clearly the nature of the difference of opinion, what immediately follows the finding of fact just quoted. The learned court added that "No Board action authorizing the sending of the notice was taken nor was any action ratifying it taken by the Board as a Board." We regard the suggested distinction of no consequence in the decision of the case. We also think the analogies suggested from action by public bodies[7] required by statute to act in a particular

---

[7] If the statute requires notice to all prior to a meeting, failure to comply will of course be fatal, as in cases called to our attention: *Pike Co. v. Rowland,* 94 Pa. 238, involving county commissioners; *Mundy Paving, etc., Co. v. Delaware Co.,* 299 Pa. 225, also involving county commissioners. The General County Law of 1929, P. L. 1278, sec. 105, 16 PS section 105, for example, provides: "Two of the commissioners shall form a board for the transaction of business, and, when convened in pursuance of notice, or according to adjournment, shall be competent to perform all the duties appertaining to the office of county commissioners." *Nason v. Poor Directors,* 126 Pa. 445, condemned informal action by two poor directors in the absence of the third who had no notice

way or from the conduct of the business of private corporations,[8] are misleading and generally inapplicable in passing on the validity of the administrative acts of the board. It is undisputed that defendant, Brooks, was performing his duty as a member of the board when he received the legal advice stated and which the Administrative Code required the board to follow. The court found that the three members of the board approved or ratified, in the manner stated, the sending of the notice.

The board is an administrative body established by statute,[9] with a great variety of powers and duties. A reasonable construction must be given to the legislation[10] on the subject, having regard to the purposes to be accomplished by it. There is nothing in it to show that two of the three members of the board must always

---

of the meeting; no record of the transaction of the two was made; the statute to which the Directors of the Poor were required to conform is not cited in the opinion. The more recent Act of May 14, 1925, P. L. 762, sec. 221, 62 PS section 221, required such directors to "keep a record of their proceedings, which shall be evidence of their action in any subsequent judicial proceedings."

[8] Compare *Langolf v. Seiberlitch*, 2 Pars. Eq. 64, KING, J.; *Millward-Cliff Cracker Co.'s Estate*, 161 Pa. 157; *Morris v. Stevens*, 178 Pa. 563.

[9] The title of the Act of 1933 Special Session, P. L. 13, was "Creating an independent administrative board to be known as The Pennsylvania Liquor Control Board"; and see section 1. The Act was amended and supplemented in 1935, P. L. 1246.

[10] Section 3, 1935, P. L. 1249, provides: "Interpretation of Act.— (a) This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon; and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose." See *Com. v. Stofcheck*, 322 Pa. 513; *Com. v. West Phila. Fidelio, etc.*, 115 Pa. Superior Ct. 241; *Com. v. One Dodge Motor Truck*, 123 Pa. Superior Ct. 311, 326 Pa. 120; *Cheris's Liquor License*, 127 Pa. Superior Ct. 355. Compare *Dunn v. Trego*, 279 Pa. 518; *Pater v. Superior Steel Co.*, 263 Pa. 244, dealing with Workmen's Compensation Act.

act formally as a unit. The nature, character and variety of the duties generally specified and imposed on the members of the board to be performed throughout the state show that the legislature intended to vest general administrative powers in the board and its members to accomplish the legislative purpose declared. It is true that the Act provides, inter alia, that "two members of the Board shall constitute a quorum and any action or order of the Board shall require the approval of at least two members," but this record does not require that we now attempt to define what action is within and what without the meaning of the provision; attempt at definition may be left until required. The learned court below was of opinion "that in matters of importance Board action is required," a conclusion which no one should dispute, and continued that "the law is not satisfied with a mere informal approval of individual members separately expressed and nowhere recorded."[11] If we should assent to the general propositions so stated, though they do not accurately describe the transaction under review, we should find them of no help in coming to a decision. In argument, apprehension of possible evils was expressed if the court should not hold that the board should have made some more formal record of the termination of the contract. The general subject is of undoubted importance. But, in giving the statute the construction required by its terms, it is neither possible nor practicable to hold that the members of the board must formally act in all that is done on its behalf; a reading of the legislation shows that it was not intended, and that the words of the Act and the nature of the duties imposed do not require it. No general rule on the subject can be laid down.

---

[11] The learned court added that the "testimony of J. Twing Brooks distinctly shows that it was the custom to have matters such as this approved by Board action, but that this matter was overlooked and never submitted to the Board."

Each transaction may be investigated in the light of all the circumstances. A reasonable discretion must be exercised and necessarily involves freedom of choice between possible courses. An administrative board cannot function in a strait-jacket. The relative importance of the subject of the action challenged must be considered. On this record there is no charge of fraud or bad faith. We think the notice was effective for the purpose for which it was given and that the contract was terminated as of May 31, 1938, and that it was the duty of the board, in the performance of which it was engaged when the bill was filed, to take the steps necessary to award a new contract. This conclusion will not, however, determine the appeal if the record supports the learned court's conclusion that a new contract was made May 25th.

2. We come now to the effect of what was done on May 25th and May 26th. The facts leading to and following the sending of the notice have been stated. Thereafter, the board met formally on May 25th, and took action recorded in the minutes in the following words: "The Board unanimously awarded a two year contract to [plaintiff] contract to be accepted and placed in files." Mr. Donovan, called on behalf of plaintiff, was asked by the court, after reading that minute, "Was there any notice or not sent to the plaintiff company of that?" and answered "No Sir." At a meeting of the board held the next day, May 26th, the action of May 25th was rescinded, as appears by the following minute: "Upon the advice of the counsel to the Board, Special Deputy Attorney General Segelbaum, it was unanimously decided to rescind the action of May 25th, 1938, to renew the Merchants Warehouse Co. contract, the Director of Operations Stevens was instructed to notify all warehouses in Philadelphia of the Board's intention to receive bids for warehousing and distribution on June 15th, 1938." The learned court found that on May 26th, Stevens, the board's Director of Op-

erations, telephoned to plaintiff's vice-president that the contract had been awarded to the plaintiff. Defendants excepted to the finding and have assigned for error the dismissal of the exception. They point out that the finding can be based only on the contradicted evidence of plaintiff's vice-president and contend that the contradicting oral evidence, corroborated by the documentary evidence in the case, shows that his statement that Stevens told him of the acceptance on May 26th should not have been adopted. There is no doubt that Stevens talked with the witness; the question is, what did he say. We of course have in mind the rule that facts found from oral evidence and approved by the court in banc will not be disturbed except for manifest error. In the light of that rule we examine the probability whether the witness told the truth or was mistaken in his recollection of what Stevens said. The documentary evidence consists of part of the original bill of complaint, of two letters written by the witness and a telegram sent by him after May 26th, entirely inconsistent with the fact that he had been advised on that day of the board's action of May 25th. In the bill of complaint, plaintiff had averred that on May 11, 1938, the chairman of the board notified plaintiff's witness that the board had awarded a contract to the plaintiff for a two-year term; that a contract resulted from the board's acceptance of plaintiff's offer of April 27th; it was the foundation of the suit. In proof of this averment, the witness testified at the first hearing, June 20th, that on May 11th he met the chairman of the board in Harrisburg, and was advised that the board "has accepted your proposal for two years. I will call you in probably the early part of next week to discuss any details about the operation that ought to be cleaned up." The chairman contradicted the witness by saying, "I made no such statement that the Board had approved the contract for two years." Later, after the trial began, the plaintiff amended the bill and changed the

date from May 11th to a later date "not specifically known to the plaintiff, but believed to be before June 1st," as the date of acceptance. If plaintiff's proposal was accepted on May 11th as the witness testified, there would have been no occasion to amend the bill by changing the date of acceptance to one, which is now claimed, had been communicated to the witness by Stevens on May 26th. Appellants therefore say that the following evidence given by the witness on June 20th is inconsistent with what might have been expected if, in fact, the witness had been informed by Stevens of the award on May 26th, as he subsequently stated. On June 20th the witness testified that Stevens said to him on May 26th, ". . . 'George, we only have a few more days until May 31st, tomorrow is Friday, Saturday is a half day, Monday is a holiday and Tuesday is the last day, when can you come up here?' I said, 'Colonel, I am at your service, I will be there anytime you want to see me.' 'Well,' he said, 'there isn't very much to discuss, suppose we make it Monday or Tuesday afternoon at one o'clock in the afternoon.' I said, 'I will be very glad to meet you.' . . ." The witness at that hearing did not testify that, on the same day, Stevens told him the contract had been awarded, a very significant omission, if in fact, he had been so informed, as he testified on June 27th. At the next hearing, which took place on June 27th, the witness was recalled. When he then took the stand he did so after having heard for the first time, from other witnesses at the prior hearing, of the resolutions of the board adopted May 25th and May 26th. He then added to his testimony that on May 26th Stevens said to him, "George, the board has awarded you a contract for two years, when can you come up here." Now, appellants contend that it is inconceivable that the witness could have overlooked part of a conversation as important as that when, on June 20th, he gave his first testimony at the trial; in support of their contention they point to the

fact that the witness did not know of the action of the board of May 25th but had all along been proceeding on his assertion of an acceptance communicated by the chairman on May 11th as repeated by the witness in his two letters of May 31st and June 14th and in' the telegram of May 28th. In this connection the circumstances in which the telegram was sent may be stated. As the board had terminated the contract as of May 31st and, as that date was arriving, the board desired to arrange with plaintiff to continue operating under the terminated agreement for one month to enable the board to award a new contract; the board accordingly asked the plaintiff by telephone so to continue its operation. This the plaintiff was unwilling to do, and expressed its disapproval by the telegram of May 28th sent by the witness. The telegram stated: "Have a telephone message from Mr. Stevens requesting us to agree to renew for a period of one month contract present in effect. Our position is that you legally terminated this contract by serving proper written notice upon us ninety days prior to May 31st and that you subsequently accepted verbally our written proposal submitted to you under date of April 27, 1938, when our Mr. Richardson visited you in Harrisburg on May 11th." Now, the appellants ask, would he at the time have fixed the acceptance as of May 11th if, in fact, on May 26th, two days before the date of his telegram, Stevens had told him the contract had been awarded on May 25th? In two letters written by the witness, one dated May 31st (which repeats the position taken in the telegram) and the other June 14th,[12] he insisted that his company had a contract with the board in consequence of the chairman's statement that the board had accepted plaintiff's proposal. If there

___

[12] Saying: "On May 11, 1938, you informed me that the proposal for the two (2) years was entirely satisfactory to the Board and had been accepted. We regarded this as a contract and had the impression that you likewise regarded it as such."

were nothing else in the case but the oral evidence of this witness and the documents written by him it would be almost impossible to conclude that he was not mistaken on June 27th when he added to his evidence given on June 20th of his conversation with Stevens, the statement that on May 26th Stevens told him the contract had been awarded to plaintiff by the board on May 25th. But, there is something more. In addition to the documents prepared by him after May 26th, the record contains Stevens's denial that he told the witness of the resolution of May 25th, and also the chairman's denial that he told the witness on May 11th that the contract had been awarded to plaintiff. We are therefore not confronted with the difficulty of deciding where there is merely one oath against another. It is true this court has not seen the witnesses and heard them testify and therefore has not had that aid in weighing the oral evidence, but we have the documentary evidence,[13] and must determine the point in the light of all the evidence. On such a record we must differ from the learned court and decline to accept its finding of fact. The third assignment of error complaining of the dismissal of the exception is therefore sustained.

The situation, then resulting, is that the first contract had been terminated and on May 25th the board passed a resolution to award another contract to the plaintiff, subject to subsequent agreement on details and execution by the Department of Property and Supplies as the statute required. That resolution the board rescinded on May 26th before it was communicated to plaintiff. It is not necessary to consider what plaintiff's rights might have been if the board had advised plaintiff of its action of May 25th before rescinding it: compare *Morganstern Electric Co. v. Coraopolis Borough*, 326 Pa. 154; *Groskin v. Bookmyer*, 310 Pa. 588.

---

[13] Compare *Hunt v. Aufderheide*, 330 Pa. 362, 369.

The decree is reversed; the record is remitted to the end that the court below may retain jurisdiction for such time as may reasonably be required to enable the Liquor Control Board to make a new contract, whereupon, on motion of counsel for the board then to be made, or of the court's own motion, the bill shall be dismissed at the costs of the plaintiff.