Ryan, Appellant, *v.* Unemployment Compensation Board of Review.
Bottone, Appellant *v.* Same.
Gallagher, Appellant *v.* Same.
McLaughlin, Appellant, *v.* Same.

Argued October 30, 1940.

Argued November 18, 1940.

Submitted December 9, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, RHODES and HIRT, JJ.

*James J. Vogel,* for appellants, Nos. 117 and 118.

*Wm. Vincent Mullin,* with him *John V. Doughten,*
for appellant, No. 158.

*Paul A. Rafferty,* for appellant, No. 311.

*R. Carlyle Fee,* Assistant Special Deputy Attorney
General, *Charles R. Davis,* Special Deputy Attorney
General, and *Claude T. Reno,* Attorney General, for
appellee, Nos. 117, 118, 158 and 311.

OPINION BY KELLER, P. J., January 30, 1941:

These appeals, while differing in their facts, all have
one point in common. They are concerned with the
power of the Unemployment Compensation Board of
Review to dismiss an employee from the civil service
created under the Unemployment Compensation Law [1]

---

[1] Act of December 5, 1936, P. L. of 1937, p. 2897, and its amend-
ment of May 18, 1937, P. L. 658.

because of incorrect answers to questions in his application for examination respecting his scholastic training,—alleged to be wilful misrepresentations—where a prior board or a member thereof, after learning of such errors or discrepancies, had deleted the credit allowed the employe for such scholastic training and revised his rating or grade to conform therewith, and the director of civil service, who was also secretary of the board, had so notified the employee by letter.

We have ruled[2] that where the Unemployment Compensation Board of Review has acted in a matter involving its discretion with respect to the selection of civil service employees, its action cannot be set aside by a subsequent board, in the absence of fraud, misrepresentation or misconduct; and we now add that where the board has considered and determined the question whether an applicant has been guilty of fraud, wilful misrepresentation or misconduct, its findings of fact on that matter, unappealed from, are binding and conclusive on subsequent boards and not subject to review by them. But to have that conclusive effect it should appear that the matter was duly considered by the board and a decision made by it on the subject in accordance with the statute. For the Act specifically provides (Sec. 203) : "Two members of the board shall be a quorum, and no action of the board shall be valid unless it shall have the concurrence of at least two members."

We are, therefore, met with the additional question, as to two of these appeals (Gallagher, No. 158 and McLaughlin, No. 311), whether the question of the employee's wilful misrepresentation as to his scholastic

---

[2] *Kassarich v. Unemployment Compensation Board of Review,* 139 Pa. Superior Ct. 599, 12 A. 2d 823; *Speer v. Unemployment Compensation Board of Review,* 140 Pa. Superior Ct. 207, 14 A. 2d 462; *Ehrman v. Unemployment Compensation Board of Review,* 142 Pa. Superior Ct. 289, 16 A. 2d 428.

training had been considered and ruled upon by the prior board, or by the concurrence of two members thereof, or the deletion of the credits for such scholastic training—even if regarded as negativing such wilful misconduct—had been the act of only one of its members, in which case it would not be the valid action of the board, so as to bar subsequent consideration of the subject and a decision by a succeeding board.

The Ryan case (No. 117) and the Bottone case (No. 118), on the records presented to us, are not only less clear as respects the intentional character of their misstatements, but it seems that as to them the present board recognized that the prior board had considered and decided against any intentional misconduct by the applicants in making them.

The Ryan case and the Bottone case were first heard together by the present board on December 4, 1939. While the records of those hearings are not included in the printed records on appeal, they form part of the original records certified to us and we have considered them.

In the Ryan case, the appellant attended the night sessions of the Altoona High School for four scholastic years and *finished his course,* which might furnish some justification for a ruling by the prior board that his statement in his application that he had attended the Altoona High School for four years and had graduated, was not a wilful misrepresentation but had been innocently made, and that he would be sufficiently penalized by deleting the credit given him for graduating from high school.

In the Bottone case, the appellant stated in his application that he had entered the Bradford High School in September 1922 and left February 1926 and had received fourteen credits for commercial or business course and four credits for social service. He did not claim to have been graduated. It was developed that he

had attended the *Junior* High School at Bradford from 1922 to 1925 inclusive. This may have led the prior board to decide that the misrepresentation was not wilful but was due to an innocent misunderstanding, and that he should suffer no other penalty than a corresponding reduction of his rating.

It does appear, moreover, that in the hearing before the present board on December 4, 1939, Mr. Charles Reeser, representative of the A. F. of L., appeared for both Ryan and Bottone and entered the following objection to a reconsideration of the matters by a subsequent board: "We would like to enter an objection to a second hearing inasmuch as both these cases were heard before and revised."

To which Mr. Stahlnecker, chairman of the present board replied: "The original Board *considered the matter and made a decision,* revising the rank on the list. Your objection now is to our reconsidering the old matter, and making a decision on the basis of the whole picture regardless of the *previous decision or action* of the Board." (Italics supplied).

Of course, this happened before our decision in *Kassarich v. Unemployment Compensation Board of Review,* supra, was filed—April 22, 1940. Under the principles announced in that case, Mr. Reeser's objection was sound, and any *decision* of the prior board on the question of the wilful misrepresentation by the applicants of their scholastic training was a matter for the sound discretion of that board, and in the absence of fraud or misconduct on its part, which is not alleged, was not subject to review and reversal by a subsequent board. Consequently these appeals will have to be sustained and the decisions appealed from be reversed.

The Gallagher and McLaughlin appeals are in a different situation, both as respects the facts involved and action by the prior board.

It is difficult to see how the misrepresentations made

by these two appellants as to their scholastic training and high school education were not intentional and substantial. One who has never attended a high school can scarcely, in answer to inquiries as to his attendance at a high school, innocently and in good faith state that he attended four years at a named high school (giving the years), and was graduated from it at the completion of the fourth scholastic year.[3] Every such answer must have been false and known to be false, and its purpose could hardly have been other than to secure a more favorable grade.

In the McLaughlin case (No. 171), for example, the misstatements were most flagrant. His answers to the questions in the application blank were as follows (the answers being italicized):

"Give Names and Locations of Schools Attended— Put circle around no. of last year attended ......b. High School, 1 2 3④ *Germantown High School, Germantown, Phila.*

Major subjects. *Bookkeeping.*

Minor subjects. *Commercial Correspondence.*

Did you graduate? *Yes.*

Give date of entering. *1919*

Give date of graduation. *1923*

Give date of leaving. *1923"*

On being examined as to these statements, he admitted that he had never attended the Germantown High School and had not gone to any school, day or night, from 1919 to 1923. Such a *detailed* misrepresentation of facts must have been intentional, and its effect should not be condoned or overlooked by his mere assertion that he thought his practical experience was the equivalent of a four year high school. It was for the *board,* upon a review of an accurate statement of his practical business experience, in connection with a *truthful* rep-

---

[3] See *Thurston v. Unemployment Compensation Board of Review,* 140 Pa. Superior Ct. 254, 13 A. 2d 890.

resentation of his scholastic training to decide whether he possessed the requisite qualifications for eligibility to the position, and the grade or standing to which he was entitled; and any wilfully dishonest or untruthful statement as to either his business experience or educational training should have rendered him ineligible, for as we said in *Thurston v. Unemployment Compensation Board of Review*, 140 Pa. Superior Ct. 254, 13 A. 2d 890: "...... it is desirable as a matter of public policy that the civil service employees under the statute shall be composed of honest and truthful persons; and fraud and misrepresentation in securing the appointment are grounds for dismissal."

In the Gallagher case (No. 158) the appellant set forth in his application that he had attended the Danbury, Connecticut, High School for *four* years, and made the following specific answers to questions:

"Did you graduate? *Yes.*

Give date of entering. *9/14*

Give date of graduating. *6/15/18.*

Give date of leaving. *6/15/18.*"

On examination by the present board, he admitted that he had attended the Danbury High School from September 1916 to January 1918 and did not graduate. His excuse for the false statements was that he was basing his qualifications on his *experience,* not his *education,* and he gave no other explanation for the insertion in the application of these circumstantially false answers as to his education which were to be used as a basis for the determination of his eligibility and his grade or rank.

Notwithstanding the admitted falsity of these representations as to scholastic training, if the prior board in passing upon them, after their falsity was brought to its attention, had decided that the misrepresentations were unintentional or were innocently made, in the absence of fraud or misconduct on the part of the board itself, a subsequent board would have no right

to review this decision and substitute a different finding, even though the substituted finding would seem more in accordance with the facts of the case; but in the absence of such a decision, a mere deletion of the credits given the applicant for such false statements as to his scholastic training, would not, of itself, amount to a finding that the misrepresentation was unintentional and innocent. It would require some definite ruling or decision of the board in the matter.

Furthermore, we are not so much concerned with the letter sent the appellants by the director of civil service and secretary of the board, announcing the deletion of the credits and the revision of their grades, as with the action on the matter, if any, by the board itself or concurred in by two members thereof.

The letter, standing by itself, unless authorized by the board or concurred in by a majority thereof, or unless in accordance with the action of the *board* taken on the subject, would not be such a legal adjudication of the matter as would prevent a subsequent board from acting upon it.

It appears from the records in the McLaughlin case (No. 311) that his statements as to his scholastic training having been checked with the reports from the school authorities and the abovenoted errors or discrepancies therein having been discovered, he was notified to appear before the board on August 22, 1939 for a hearing upon them. At this hearing only two members of the board were present, the chairman, Robert L. Myers, Jr. and P. Stephen Stahlnecker. Mr. McLaughlin appeared and, in explanation of his misstatements, testified that he thought his business experience and outside study and reading were the equivalent of a high school education, but gave no reason at all for his statements that he had attended the Germantown High School for four specific years, naming them, and had graduated from it in 1923, when he had not attended it at all during those years.

Following that meeting, the director of the civil service, who was also secretary of the board, notified the employee, by letter dated August 30, 1939, that the board had checked his education and employment record and had found certain discrepancies in his application which required a revision of his rank on the List of Eligibles for assistant accountant, to wit: "Central—35; Dist. No. 12—16; Phila. Co.—15" whatever that might mean.

Mr. Stahlnecker, who was a member of that board and is chairman of the present board, stated at the hearing on the appeal on August 28, 1940, that Mr. McLaughlin's case was not considered and decided by the board or two concurring members thereof, nor the secretary's letter to him authorized by the board or two members; and the secretary, on being sworn, testified that the instruction to write the letter came from the chairman, individually, and he gave no evidence as to any action by the board on the case—and the notes of the hearing on August 22, 1939 were not transcribed until August 1, 1940. Following their transcription a subsequent board ordered Mr. McLaughlin's removal from the list of eligibles and his dismissal from the service, by reason of wilful misrepresentations as to his scholastic training; and after hearing on appeal, the board sustained this action.

As it does not appear in the record that the *board* took any action deciding whether McLaughlin's misrepresentation as to his scholastic training was unintentional, or authorizing the mere deletion of his credits and revision of his rank on the list of eligibles, as the result thereof, prior to the secretary's letter of August 30, 1939, or that two members of the board concurred in deciding that the effect of his misrepresentations should be limited to the deletion of his scholastic credits and the revision of his rank, there is no evidence before us of any valid action by the *board* in exercise of its

discretion upon this matter, such as would prevent a subsequent board from acting upon it; and the decision of the board will be affirmed, subject to its being reopened and reversed, if it can be shown that the board, by the concurrence of two of its members, had decided that the applicant was not guilty of wilful misrepresentation as to his scholastic training and had authorized the letter of the secretary of August 30, 1939 as a result thereof.

The record is even barer of any prior action by the *board* in Gallagher's case (No. 158). It shows that on May 22, 1939 the director of civil service called Mr. Gallagher's attention to the errors or discrepancies as to his scholastic training in his application, and having received no reply from him, wrote him again on July 28, 1939, requesting an explanation and the furnishing of sufficient evidence of his scholastic education within ten days, in order to retain his civil service status. On August 6, 1939, he replied admitting the errors as to his attendance at the Danbury High School and stating that if he said he had graduated, it was unintentional error; that in filling out the application he based his qualifications on his experience, not his education—but giving no explanation for the detailed misstatements which he had made. Apparently he did not appear at the time fixed for the hearing; but on August 23, 1939, after Mr. Stahlnecker had become a member of the board, the director of civil service, who was also the secretary of the board, wrote Gallagher a letter, similar to the one sent McLaughlin, revising his grade or rank as an eligible, as follows: State—8; Dist. No. 12—5; Phila. Co.—5—which in a letter of the director to the Secretary of Labor and Industry, dated September 4, 1939, was interpreted to mean:

"A-8 instead of 6—Central office List of Eligibles.

5 instead of 4—District No. 12 List of Eligibles.

5 instead of 4—Phila. Co. List of Eligibles."

On January 26, 1940, the secretary of the board, noti-

fied Mr. Gallagher to appear before the Board of Review on January 31, 1940, for a hearing on these matters, informing him that in the event he did not appear the board would take such action as was necessary in accordance with the information and records on hand.

The record before us does not show that he appeared for the hearing, and on February 2, 1940, the board ordered his removal from the list of eligibles and his dismissal from employment because of his knowingly and intentionally having made false statements as to his education, in order to obtain employment in the Bureau of Employment and Unemployment Compensation.

He appealed from the order of dismissal to the Board of Review, which after a full hearing, dismissed the appeal.

As in the McLaughlin case, there is no record of any action by the board, either officially or concurred in by two members of the board, disposing of or deciding the question as to the wilfulness or innocence of the misstatements made by Gallagher as to his scholastic training, or adopting or authorizing the action of the director in writing the letter of August 23, 1939, as constituting a finding on that question. Of course the applicant would necessarily have to lose the credit ratings given him for scholastic training which he had never received; but it did not follow, in the absence of a finding or decision of the board, validly taken pursuant to section 203, supra, that the effect of his misstatements would be limited to a demotion in rank.

Hence the same disposition of this appeal will be made as in the McLaughlin case, and the decision of the board will be affirmed, subject to its being reopened and reversed, if it can be shown that the board, by the concurrence of two of its members, had found that the applicant was not guilty of wilful misrepresentation as to his scholastic training and had authorized the

letter of the secretary of August 23, 1939 as a result thereof.

No. 117 October Term, 1940—Glenn Joseph Ryan, appellant. The decision of the board of review is reversed. The appeal is sustained and the appellant is ordered to be restored to the same grade of employment in which he had been employed.

A like order is entered in No. 118 October Term, 1940—Joseph E. Bottone, appellant.

No. 311 October Term 1940—Thomas L. McLaughlin, appellant. Decision affirmed, subject, as above set forth.

A like order is entered in No. 158 October Term, 1940, Frank A. Gallagher, appellant.