## Gallagher, Appellant, *v.* Unemployment Compensation Board of Review.

Argued December 11, 1941.

Before KELLER,

P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*William V. Mullin,* with him *John V. Doughten,* for appellant.

*R. Carlyle Fee,* Assistant Special Deputy Attorney General, with him *Charles R. Davis,* Special Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellee.

OPINION BY KELLER, P. J., March 4, 1942:

The Unemployment Compensation Board of Review on February 2, 1940, after a hearing, of which due notice was given him, but which he did not attend, entered its order finding that Frank A. Gallagher had knowingly and intentionally made false statements relative to his education, in his application for employment as an accountant in the Bureau of Employment and Unemployment Compensation in the Department of Labor and Industry (Act of December 5, 1936, P. L. 1937, p. 2897, as amended by Act of May 18, 1937, P. L. 658). And it accordingly directed that his name be removed from all lists of eligibles prepared by the board and certified to the Secretary of Labor and Industry for positions in said bureau, and that, if appointed to a position in said bureau, he should be summarily dismissed. From his dismissal, following this order, he appealed to the board, in its appellate capacity (sec. 208(p) ), which on March 18, 1940, after a hearing at which Mr. Gallagher was present and testified, dismissed his appeal. He, thereupon, appealed to this Court.

We may say that the evidence fully warranted the action of the board and establishes that, in stating his educational training in his application for employment, Gallagher had represented that he had attended the

Danbury, Connecticut, high school for four years and had graduated from it; stating specifically, that he entered said high school in *September, 1914,* and was graduated on *June 15, 1918.* He subsequently admitted that he had actually attended the Danbury High School for only one full year and one term, viz., from *September 1916 to January 1918,* and had not graduated; and that he knew that his answers were false. His only excuse for this misrepresentation was that he was basing his qualifications on his *experience,* not his *education*—which was no justification whatever for an intentional misstatement of the facts. See *Thurston v. Unemployment Compensation Board of Review,* 140 Pa. Superior Ct. 254, 13 A. 2d 890; *Force v. Unemployment Compensation Board of Review,* 143 Pa. Superior Ct. 20, 18 A. 2d 81. When the case came before us on appeal, (see *Ryan et al. v. Unemployment Compensation Board of Review,* 143 Pa. Superior Ct. 8, 17 A. 2d 664), the only thing that interfered with our immediate affirmance of the order was the question whether a prior Unemployment Compensation Board of Review had considered and passed upon the intentional character of the misrepresentation, and, notwithstanding the overwhelming evidence of such wilful and intentional misrepresentation, had found and decided that he had made the misrepresentation innocently and unintentionally; holding that if it had done so, under our ruling in *Kassarich v. Unemployment Compensation Board of Review,* 139 Pa. Superior Ct. 599, 12 A. 2d 823, a subsequent board could not, in the absence of fraud, set aside such finding and decision. We said at that time that the mere fact that a prior board had written him a letter, notifying him of the deletion of his scholastic credits obtained by such misrepresentations and the revision of his rank on the list of eligibles, would not amount to a decision or finding by the board that his misrepresentation was unintentional and innocent; for in no event, whether his misstatement was intentional

or unintentional, could he keep the credits and rating thus wrongly obtained.

We subsequently referred the case back to the board, with directions to re-open the matter and determine as a question of fact—no minutes having been kept by the prior board—whether that board, *sitting as a board,* by the concurrence of two of its members, had found that the said Frank A. Gallagher was not guilty of wilful misrepresentation as to his scholastic training, and, as a result thereof, had decided that the penalty for such misrepresentation should be limited to the deletion of the scholastic credits so obtained.

Before this rehearing was completed, we made clear, in our opinion in the case of *Thomas v. Unemployment Compensation Board of Review,* 144 Pa. Superior Ct. 369, 19 A. 2d 488, just what we meant by the words, 'decided,' 'found,' or 'finding' in this connection. We said: "And in using the term 'decided,' 'found,' or 'finding' in connection with, or as a result of, a 'hearing' ordered, by the board, we mean formal action taken by the board, *as a board,* concurred in by at least two members present, and not the action of two individual members of the board, taken separately and apart from a meeting of the board. With respect to matters of sufficient importance to require a 'hearing' by the board, the action taken pursuant to such hearing, in order to be valid, must be the 'action of the board,' concurred in by at least two members (sec. 203); and it should be taken in board meeting."

The evidence taken on this rehearing shows that P. Stephen Stahlnecker became a member of the board on July 12, 1939, the other two members at that time being Robert L. Myers, Jr., Chairman, and George E. Prindible. Mr. Myers and Mr. Prindible presented their resignations, to take effect at the close of business of August 23, 1939.

Between July 12, 1939 and August 23, 1939, inclusive, two hearings of the board were called, (July 27 and

August 22), to pass on cases of alleged misrepresentations, etc. by employees in their applications for employment. Mr. Stahlnecker attended both of them. Some ten or twelve cases were heard at each session of said meetings. Frank A. Gallagher's case was not among them, and was not then heard or passed on by the board. Mr. Melvin L. Jacobs, Secretary of the Board and Director of Civil Service, testified that between August 7, 1939, the date of the receipt of Mr. Gallagher's letter, admitting his misstatement as to his attendance at Danbury High School, and August 23, 1939, when Mr. Jacobs sent him the letter notifying him of the revision of his rank, in consequence of the deletion of the credits given for graduation at said school, no meeting of the board was called and no hearing was had or scheduled to determine whether Gallagher's misrepresentation as to his educational training was intentional or unintentional.

Mr. Stahlnecker testified positively that, from July 12 to August 23, 1939, inclusive, he was never consulted formally or informally, or at a meeting of the board, with respect to cases like this appellant's—where there were discrepancies in the application, but no *hearings* had been scheduled or held—as to his vote, or opinion, on what should be done with the case; that if any meetings were held by Mr. Myers and Mr. Prindible to pass upon such cases, they were held without any notification to him of such meetings; that he was present every working day of that period—he made it a point to be present during all working hours—and would have attended them if he had been notified; that he was not consulted in this case, was not presented with the facts or record, nor given an opportunity to give his vote or express his opinion; that he was never advised of or given opportunity to be present at any meeting where the Chairman by himself, or with Mr. Prindible, was considering what should be done by way of 'sifting out' cases for hearing and determination; that he partic-

ipated during those six weeks in the regularly constituted Wednesday meetings for the hearing of unemployment compensation appeals, and at two hearings, held on July 27 and August 22, which had been called to hear and pass on cases of misrepresentations by employees in their applications, at each of which some ten or twelve cases were heard, but Mr. Gallagher's was not one of them; that if instructions were given the Secretary by the Chairman, respecting cases in which no hearings were held, after a consideration of the files by Mr. Myers and Mr. Prindible, it was done at a meeting or meetings of which he had no notice, and in which he was not asked to participate.

It is too plain for argument that a conference of two members of a board held without call or notice to the third member, who was at all times in the building and available for duty as a member of the board, is not a *meeting of the board* within the meaning of the Act, or within the above quotation from our opinion in *Thomas v. Unemployment Compensation Board of Review,* supra. Two members of the board cannot exclude a third member from its deliberations, on matters involving the dismissal or retention of civil service employees, either purposely, or by a course of practice adopted for their own convenience. *Board meetings* were regularly held once a week and were attended by Mr. Stahlnecker. Hearings which were duly called were attended by Mr. Stahlnecker, and the record shows no failure on his part to attend any meeting or hearing of which he was given notice. It was his right, no less than his duty, to be consulted and take part in the deliberations at all meetings of the board, and an informal conference of two members, held without notice to him that business of this nature was under consideration, is not a meeting of the board within the contemplation of the Act or our decisions construing it. And any instructions given by the Chairman to the Secretary, as the result of such a conference, on a matter so impor-

tant, even though concurred in by Mr. Prindible, was not the action of the board. See *Pike County v. Rowland,* 94 Pa. 238; *Somerset Twp. v. Parson,* 105 Pa. 360, 361; *Nason v. Poor Directors,* 126 Pa. 445, 458-9, 17 A. 616; *Mundy Paving & Const. Co. v. Delaware County,* 299 Pa. 225, 234-5, 149 A. 171. In *Merchants' Warehouse Co. v. Hitchler et al.,* 335 Pa. 465, 7 A. 2d 455, the Supreme Court held that written notice of the termination of an agreement between the Pennsylvania Liquor Control Board and a warehouse company from which it had leased storage space, sent to the company by the secretary of the board, *pursuant to advice from the Department of Justice,* and *individually and separately approved by each member of the board,* was, on the facts of that case, legally effective despite the absence of formal board action authorizing or ratifying the sending of the notice. But it furnishes no warrant to support a ruling that two members of the Liquor Control Board, at an informal conference by them, of which the third member was given no notice, could legally *grant or revoke a liquor license.*

Following the hearing directed by us, the board, at a meeting duly called, of which Mr. Stahlnecker had notice, but at which he took no part because he had testified as a witness, made, on May 14, 1941, *inter alia,* the following findings of fact:

"5.  At the time the appellant's letter of August 7, 1939 was received the personnel of the Unemployment Compensation Board of Review consisted of Mr. Robert L. Myers, Jr., Chairman, George E. Prindible and P. Stephen Stahlnecker, Members. No hearing was ever scheduled before the Unemployment Compensation Board of Review or any of its members for the purpose of taking testimony or receiving evidence in connection with discrepancies on the appellant's application. The only evidence ever submitted in any manner to the Board in connection with the intent and motives of the appellant in misstating facts in his application was

the letter of August 7, 1939, to the Director of Civil Service of the Board of Review.

"6. Some time subsequent to August 7, 1939, and before August 23, 1939, the Director of Civil Service presented to Mr. Robert L. Myers, Chairman of the Unemployment Compensation Board of Review the file which the Civil Service Section had compiled in the appellant's case, containing the appellant's application for examination in employment, verification correspondence indicating the discrepancies therein, together with the appellant's letter of August 7. This material was presented to the Chairman of the Board by the Director of Civil Service for the purpose of having the Board determine whether or not the appellant had knowingly made any false statement or representation of material facts in his application in order to obtain employment.

"7. No hearing or meeting of the Board of Review was ever scheduled by the Chairman, or by anyone else, to consider the evidence and make a determination as to whether the appellant had knowingly falsified his application in order to obtain employment. Some time between August 7 and August 23, 1939, the Chairman of the Board of Review, with the concurrence of one member, i. e., Mr. George E. Prindible, advised the Director of Civil Service to revise the appellant's score on the basis of the fact that the appellant had not attended High School for the period indicated, nor graduated from High School as stated by him in his application. The Director of Civil Service accordingly wrote to the appellant on August 23, 1939, [notifying him of the revision of his standing by reason of the deletion of the credit for four years High School attendance and graduation].

"8. Under the practice and procedure followed by Mr. Myers, Chairman, and Mr. Prindible, in cases in which they had decided that false statements in an application were not made knowingly or in order to

obtain employment, the Director of Civil Service was advised to correct the applicant's score and advise him accordingly. No specific finding was ever made in the Gallagher case, nor was it the practice or custom to make such a finding, that the discrepancies were unintentional and not made for the purpose of obtaining employment.

"9. One of the members of the Board of Review, viz., Mr. P. Stephen Stahlnecker, was never notified by the other members of the Board as to their deliberations and determination in the Gallagher case. Mr. Stahlnecker, although a member of the Board of Review from July [12], 1939, was not consulted by the other Board members in the Gallagher case and was not given an opportunity to examine the record and express his opinion as to the appellant's intent and motives in making the false statements in his application for Civil Service appointment."

As shown above, these findings are supported by the evidence, and under section 510 of the Act are conclusive upon us. The appellant's exceptions to the findings, which were confined to Nos. 7, 8 and 9, are accordingly dismissed.

The findings sustain the original decision of the board in dismissing Mr. Gallagher's appeal; and as they also establish that no valid action had been taken by the prior board, acting as a board, on the question of the wilful and intentional character of the appellant's misrepresentations as to his educational training, they furnish warrant or justification for the board's action of March 18, 1940 thereon.

Accordingly, the decision of the board of March 18, 1940 is affirmed and the appeal is dismissed.