# Lancaster County Liquor Store Protest

*S. S. Wenger* and *Robert Ruppin,* for protestants.

HESS, J. (Specially Presiding), February 14, 1956.
—The Pennsylvania Liquor Control Board determined to establish and operate a liquor store on East State Street, in the Borough of Quarryville, Lancaster County. A protest against setting up a store at that location was filed as provided for by law, and hearings were held for the taking of testimony before the two judges of the court of quarter sessions. By reason of a difference of opinion, the court could not decide the issue. Pursuant to an order signed by The Honorable Horace Stern, Chief Justice of the Supreme Court of

Pennsylvania, the writer of this opinion was assigned specially to render a decision in this case. Counsel for the parties stipulated that the notes of testimony taken at the hearings should be transcribed, and that the issues should be decided by the writer without the taking of additional testimony. In addition to submitting excellent briefs and oral argument, counsel agreed that the writer should visit the site of the proposed liquor store in the Borough of Quarryville for the purpose of familiarizing himself with the area in question.

At the argument, counsel for the protestants contended that the judges of the Court of Quarter Sessions of Lancaster County should sit with the writer to decide the issues raised in this matter. After consulting with the judges of that court, it is our opinion that under the provisions of the order of the Chief Justice of the Supreme Court and the stipulation filed by counsel for the parties, the matter is before the writer for decision and not before the court en banc.

The issues are raised under the provisions of the Liquor Code of April 12, 1951, P. L. 90, sec. 301, 47 PS §3-301, which provides that: "The board shall establish, operate and maintain at such places throughout the Commonwealth as it shall deem essential and advisable, stores to be known as 'Pennsylvania Liquor Stores,' for the sale of liquor and alcohol in accordance with the provisions of and the regulations made under this act. When the board shall have determined upon the location of a liquor store in any municipality, it shall give notice of such location by public advertisement in two newspapers of general circulation, and no other advertisement of any kind or description shall be required, any law to the contrary notwithstanding. If, within five days after the appearance of such advertisement, fifteen or more taxpayers residing within a quarter of a mile of such location shall file a protest

with the court of quarter sessions of the county *averring that the location is objectionable because of its proximity to a church, a school, or to private residences*, the court shall forthwith hold a hearing affording an opportunity to the protestants and to the board to present evidence. The court shall render its decision immediately upon the conclusion of the testimony and from the decision there shall be no appeal. If the court shall determine that the proposed location is undesirable for the reasons set forth in the protest, the board shall abandon it and find another location". (Italics supplied.)

It would appear that the sole issue presented to us is whether the protest should be sustained because of the proximity of the site of the proposed liquor store ". . . to a church, a school, or to private residences . . .".

Under section 207(c) of the Liquor Code of April 12, 1951, P. L. 90, 47 PS §2-207, the Pennsylvania Liquor Control Board has the power and duty "To determine the municipalities within which Pennsylvania Liquor Stores shall be established and the locations of the stores within such municipality". The power to establish such stores, however, cannot be exercised in municipalities which voted in the negative on the question of establishing State Liquor Stores: Liquor Code, supra, section 472, 47 PS §4-472. The Borough of Quarryville has not disapproved such stores and, in fact, now has several retail licensed establishments operating within the borough, one immediately next door to the location of the proposed store. Under the laws of this Commonwealth just mentioned, there would appear to be no doubt that the board may properly determine that a State liquor store shall be operated within the confines of the borough.

Protestants contend that this court should find that

the proposed location is undesirable because of ". . . its proximity to a church, a school, or to private residences . . .". There are several schools and churches in the borough, and the testimony indicates that the closest would be approximately 700 feet from the proposed location. East State Street is predominately a business section although there are a few residences and apartments located on it. Thirty-one persons signed the protest that brought this matter before the court and it is conceded that they reside "within a quarter of a mile" of the location. It is interesting to note, however, that only two of the signers testified at the hearings. A total of 24 witnesses testified for the protestants, and almost that many appeared in favor of the store. A careful reading of the testimony would indicate that the protestants' witnesses are sincerely and conscientiously opposed to the use of alcohol and view with alarm the coming of a liquor store to Quarryville which is, for the most part, surrounded by townships that have voted against granting licenses to retail establishments and clubs. In fact, the large majority of the protestants' witnesses do not reside within the limits of Quarryville. A large number of the witnesses indicated that they would disapprove of a store at any location in Quarryville.

The court cannot question the wisdom of the General Assembly of this Commonwealth which, after the repeal of prohibition, established a system permitting the sale of alcohol by licensed establishments for consumption on the premises and by State stores for consumption away from the premises. Undoubtedly, the use of alcohol as a beverage has brought ruination to many individuals and has been the cause of considerable crime and vice. A court may not decide what the law should provide or what a judge might personally prefer the law to be. We cannot ordain that Quarry-

ville shall be "dry" and certainly the people who reside therein have not elected to do so. In deciding to establish a liquor store within the confines of Quarryville, the Pennsylvania Liquor Control Board acted within its defined powers, and a court may not nullify the discretion of the board, unless we can find that the proposed location is "undesirable" because of ". . . its proximity to a church, a school, or to private residences . . .".

"The board is an administrative body established by statute, with a great variety of powers and duties. A reasonable construction must be given to the legislation on the subject, having regard to the purposes to be accomplished by it": Merchants' Warehouse Co. v. Hitchler, 335 Pa. 465, 471.

The word "proximity" is somewhat nebulous. It is easy to define its meaning, but difficult to relate it to any given set of facts. The word is defined in Webster's New International Dictionary 2nd Ed. as meaning, "Quality or state of being next or very near in time, place, etc."; "immediate or close propinquity". If one lived in a sparsely settled area of the far west, he might consider himself as being in close proximity to a neighbor who lived many miles distant. Yet, an inhabitant of a crowded city might consider an individual who lived "in the next block" as not being near or in close proximity to himself. The legislature has not seen fit to define proximity by measurement. When licenses are sought for retail establishments and clubs, the board is given discretionary power to refuse to issue such licenses if the establishment is within 300 feet of any church, school, etc.: Liquor Code, supra, section 432, 47 PS §4-432. While that section is not controlling in the matter of locating liquor stores, it at least is some indication of the thinking of the General Assembly insofar as the matter of locating establishments

selling liquor near schools and churches is concerned. There is presently a retail licensee located next door to the premises where the board seeks to locate a store and, apparently, as long as the owner of that establishment complies with existing laws and regulations he could not be refused a license, unless the borough voted to go "dry". To conclude that the legislature intended that a State store could be prohibited which is located adjacent to a licensed retail establishment when such retail establishment must be permitted to operate would be, to say the least, an anomaly. In fact, it is clear under the "local option" provision of the Liquor Code, supra, that the citizens of Quarryville could vote to ban licensed establishments and, in spite of such action, the board could locate a liquor store within the borough unless the citizens voted specifically to disapprove of such stores.

The writer suggested during the course of argument that he would be happy to recess the case and allow the protestants to suggest some other more suitable location to the board. The protestants failed to avail themselves of that opportunity and the court can understand their reluctance to make such suggestion for it is apparent that the great majority of the witnesses for protestants would favor no location in Quarryville or even in the southern area of Lancaster County. We personally visited the borough, along with counsel, and viewed the proposed location, as well as the greater portion of the territory of the borough and its schools and churches. It was at once apparent that if a liquor store should be permitted in any area of the community, it would be more suitable at its proposed location in the business area of the town than in any other portion of it.

In considering "proximity" we deem it important, as previously indicated, to relate it to the facts of this

particular small community of approximately 1,300 persons. We have carefully studied the opinions in what appear to be the reported cases of Pennsylvania courts on this subject, but are not relying on any of them for our decision because it is our conclusion that it is a matter of the facts of each case that must control a decision under the statute in question.* Under the facts in the record before us we cannot find that the location of the proposed liquor store is proximate ". . . to a church, a school, or to private residences . . .".

On the other hand, assuming we were warranted in coming to the opposite conclusion, in that event: "If the court shall determine that the proposed location is undesirable for the reasons set forth in the protest, *the board shall abandon it and find another location*": Liquor Code, supra, section 301. (Italics supplied.) In this case any other location that the board might select in Quarryville would be, in our opinion, more objectionable than the proposed location.

We have purposely refrained from setting forth and discussing the testimony of any particular witness. It is apparent that the controversy arising out of this case has caused considerable tension and bitter feelings in the area. We do not prefer to add fuel to that bitterness by resting our conclusion upon the testimony of any particular witness or group of witnesses. Suffice is to say that we have carefully considered the entire record, and for the reasons we have set forth are required to dismiss the appeal of the protestants.

And now, to wit, February 14, 1956, the protest to the locating of a Pennsylvania Liquor Store on East State Street, in the Borough of Quarryville, Lancaster County, is dismissed.

---

* In re State Liquor Store in Butler, 20 D. & C. 437; Portland Liquor Store, 26 Northamp. 3; In re Liquor Store Location Protest,

41 Dauph. 386; In re Liquor Store Location, 83 Pitts. L. J. 680. All of the cases cited are decisions rendered approximately 20 years ago, shortly after the State store system became effective. It may be significant that in both cases where the court sustained the protest, large cities, Pittsburgh and Harrisburg, were involved where there was apparently little difficulty for the board to select a more suitable location.